

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2019 DEC -5  P 12: 41

WILLIAM W. BLEVINS
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

# FELONY

### SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT
### WIRE FRAUD, WIRE FRAUD, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  19-219** |
| **v.** | * | **SECTION: "L"** |
| **DAMIAN K. LABEAUD** | * | **VIOLATIONS: 18 U.S.C. § 371** |
| a/k/a Damian Kevin Lebeaud | | 18 U.S.C. § 1343 |
| a/k/a Damien K. Lebeaud | * | 18 U.S.C. § 2 |
| **LUCINDA THOMAS** | | |
| **MARY WADE** | * | |
| **JUDY WILLIAMS** | | |
| a/k/a Judy Lagarde | * | |
| **DASHONTAE YOUNG** | | |
| **GENETTA ISREAL** | * | |
| **MARIO SOLOMON** | | |
| a/k/a Mario Salomon | * | |
| **LARRY WILLIAMS** | | |
| | * | |

\*     \*     \*

The Grand Jury charges that:

### COUNT 1
(Conspiracy to Commit Wire Fraud)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    Defendants **DAMIAN LABEAUD, a/k/a Damian Kevin Lebeaud, a/k/a Damien**

**K. Lebeaud ("LABEAUD"), MARIO SOLOMON, a/k/a Mario Salomon ("SOLOMON"),**

and **LARRY WILLIAMS ("LARRY WILLIAMS")** resided in New Orleans, Louisiana.



_ Fee _____
_ Process _____
X Dktd _____
_ CtRmDep_____
_ Doc. No. _____

2.      Defendants **LUCINDA THOMAS ("THOMAS"), MARY WADE ("WADE"),** **JUDY WILLIAMS,** a/k/a **Judy Lagarde ("JUDY WILLIAMS"),** and **DASHONTAE** **YOUNG ("YOUNG")** resided in Houma, Louisiana.

3.      Defendant **GENETTA ISREAL ("ISREAL")** and Anita Scott ("Scott") resided in Houston, Texas.

4.      On or about February 13, 2019, Scott died in Houston, Texas.

5.      Attorney A and Attorney B were personal injury attorneys licensed to practice in Louisiana.

6.      Attorney A and Attorney B operated a law firm together in New Orleans, Louisiana.

4.      The Danziger Bridge and the intersection of Chef Menteur Highway and Downman Road were located in the Eastern District of Louisiana.

5.      Southern Refrigerated Transport, Inc. ("SRT") was an interstate commercial trucking company headquartered in Texarkana, Arkansas.

6.      Covenant Transportation Group ("Covenant"), headquartered in Chattanooga, Tennessee, was the parent company that owned SRT.

7.      IQS Insurance Risk Retention Group, Inc. ("IQS") maintained an office in Chattanooga, Tennessee.

8.      IQS insured Covenant and SRT.

9.      Southeastern Motor Freight, Inc. ("SMF") was a commercial trucking company headquartered in Jefferson, Louisiana.

10.     Hudson Specialty Insurance Company ("Hudson") maintained offices throughout the United States and Canada.

11.     Napa River Insurance Services ("NAPA") was a wholly owned subsidiary of Hudson.

12.     NAPA provided claims and risk management for Hudson clients including SMF.

13.     NAPA maintained an office in Indianapolis, Indiana.

14.     Hudson insured SMF, and NAPA provided claims management for SMF.

15.     Chase Bank ("Chase") was the U.S. consumer banking business of JP Morgan Chase & Co., a global financial services firm with operations worldwide.

16.     Negotiated Chase checks that were deposited or cashed were converted into an electronic image and then electronically sent to one of three Chase data centers located in Michigan, Illinois, or Delaware.

17.     Covenant maintained a bank account with Chase.

18.     IberiaBank ("Iberia") was a domestic financial holding company with approximately 190 bank branch offices located throughout the southern United States.

19.     Iberia operated a branch location at 2401 Canal Street in New Orleans, Louisiana, in the Eastern District of Louisiana.

20.     Cashed or deposited Iberia checks resulted in electronic wire communications from Louisiana to the Federal Reserve in Atlanta, Georgia.

21.     Attorney A maintained a bank account with Iberia.

22.     On or about March 6, 2018, Attorney A filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), Case No. 2018-2189, on behalf of **JUDY WILLIAMS** and **WADE** ("Williams & Wade Lawsuit").

23. On or about March 8, 2018, the Williams & Wade Lawsuit was removed to the U.S. District Court for the Eastern District of Louisiana and assigned Civil Action No. 18-2472, Section "A."

24. On or about June 5, 2018, Attorney A filed a Petition for Damages in CDC, Case No. 2018-5540, on behalf of **THOMAS** ("Thomas Lawsuit").

25. On or about June 8, 2018, the Thomas Lawsuit was removed to the U.S. District Court for the Eastern District of Louisiana and assigned Civil Action No. 18-6113, Section "A."

26. On or about June 12, 2018, Attorney B filed a Petition for Damages in CDC, Case No. 2018-5803, on behalf of **LARRY WILLIAMS, ISREAL,** and Scott ("Larry Williams Lawsuit").

**B. THE CONSPIRACY:**

Beginning at a time unknown, and continuing until the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **DAMIAN LABEAUD, LUCINDA THOMAS, MARY WADE, JUDY WILLIAMS, DASHONTAE YOUNG, GENETTA ISREAL, MARIO SOLOMON, LARRY WILLIAMS,** and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and trucking companies by means of materially false and fraudulent pretenses, representations, and promises, by use of interstate wire transmissions, in violation of Title 18, United States Code, Section 1343.

**C. THE SCHEME TO DEFRAUD:**

It was part of the scheme and artifice to defraud that, before on or about June 6, 2017, Attorney A and **LABEAUD** met at a restaurant in New Orleans. During their meeting, Attorney

A and **LABEAUD** agreed that Attorney A would pay **LABEAUD** $1,000 per passenger for staged and legitimate accidents with tractor-trailers. Attorney A and **LABEAUD** agreed that Attorney A would pay $500 per passenger for staged and legitimate accidents that did not involve tractor-trailers.

It was further part of the scheme and artifice to defraud that Attorney A knew **LABEAUD** was staging accidents.

It was further part of the scheme and artifice to defraud that Attorney A paid **LABEAUD** for at least forty (40) illegally staged tractor-trailer accidents.

It was further part of the scheme and artifice to defraud that **LABEAUD** and Attorney A would discuss the staging of accidents before they happened.

It was further part of the scheme and artifice to defraud that Attorney A directed **LABEAUD** to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras.

It was further part of the scheme and artifice to defraud that Attorney A would advance **LABEAUD** thousands of dollars for accidents and would instruct **LABEAUD** that he owed Attorney A a certain number of accidents based on the amount of money advanced.

### The June 6, 2017, Staged Accident

It was further part of the scheme and artifice to defraud that, on or about June 6, 2017, **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** drove **THOMAS'** 2009 Chevrolet Avalanche ("Avalanche") from Houma, Louisiana, to a Burger King restaurant in New Orleans where they met with **LABEAUD** and agreed to stage an automobile accident in order to obtain money through fraud.

5

It was further part of the scheme and artifice to defraud that **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** agreed to allow **LABEAUD** to drive **THOMAS'** Avalanche.

It was further part of the scheme and artifice to defraud that **LABEAUD** drove **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG,** in the Avalanche, to locate another vehicle to collide with in the area of Chef Menteur Highway and Downman Road.

It was further part of the scheme and artifice to defraud that, at approximately 12:30 P.M., **LABEAUD,** while driving east on Chef Menteur Highway, observed a 2017 Freightliner tractor-trailer operated by SRT merging onto Chef Menteur Highway, and that **LABEAUD** intentionally collided with the SRT tractor-trailer.

It was further part of the scheme and artifice to defraud that **LABEAUD** exited **THOMAS'** Avalanche after the collision and told **THOMAS** to get behind the wheel of the Avalanche to make it appear that **THOMAS** was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that **SOLOMON** picked up **LABEAUD** after **LABEAUD** fled from the Avalanche.

It was further part of the scheme and artifice to defraud that **THOMAS** contacted the New Orleans Police Department ("NOPD") to report that she had been in an automobile accident.

It was further part of the scheme and artifice to defraud that **THOMAS** falsely reported to the NOPD that she had been the driver of the Avalanche and that the tractor-trailer had struck her vehicle.

It was further part of the scheme and artifice to defraud that **LABEAUD** and **SOLOMON** returned to the scene of the staged accident and made a false statement to the NOPD that they had witnessed the accident and claimed the driver of the SRT tractor-trailer had been at fault.

6

It was further part of the scheme and artifice to defraud that **LABEAUD** contacted Attorney A immediately after the staged accident on June 6, 2017, and arranged a meeting with **LABEAUD**, Attorney A, **THOMAS**, **WADE**, **JUDY WILLIAMS**, and **YOUNG** at the Raising Cane's restaurant ("Cane's") on Chef Menteur Highway.

It was further part of the scheme and artifice to defraud that Attorney A met with **LABEAUD, THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** after they finished with the NOPD at the scene of the staged accident in order to discuss Attorney A's representation of **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG.**

It was further part of the scheme and artifice to defraud that Attorney A paid **LABEAUD** $7,500.00 on June 6, 2017, for the **THOMAS, WADE, JUDY WILLIAMS**, and **YOUNG** staged accident as well as for another accident.

It was further part of the scheme and artifice to defraud that Attorney A demanded approximately $1,000,000.00 per plaintiff in settlement for **THOMAS, JUDY WILLIAMS,** and **WADE**.

It was further part of the scheme and artifice to defraud that on or about March 6, 2018, Attorney A filed the Williams & Wade Lawsuit in CDC.

It was further part of the scheme and artifice to defraud that on or about June 5, 2018, Attorney A filed the Thomas Lawsuit in CDC.

It was further part of the scheme and artifice to defraud that **WADE, JUDY WILLIAMS,** and **THOMAS** were treated by doctors and healthcare providers who are known to the Grand Jury at the direction of Attorney A.

It was further part of the scheme and artifice to defraud that **THOMAS** underwent neck surgery because Attorney A told her that she would get more money through the lawsuit if she had the surgery.

It was further part of the scheme and artifice to defraud that Attorney A contacted **LABEAUD** because Attorney A was worried about a telephone call made by **WADE** to **LABEAUD** prior to the staged accident and Attorney A told **LABEAUD** to contact **THOMAS** and **WADE** to instruct them to "get their stories straight." During a subsequent meeting, Attorney A gave **LABEAUD** an envelope containing phone records, pleadings, and depositions establishing **THOMAS** and **WADE** lied under oath in their September 13, 2018, depositions.

It was further part of the scheme and artifice to defraud that Attorney A met with **THOMAS** and **WADE** at a fast-food restaurant outside of New Orleans where Attorney A suggested to **THOMAS** and **WADE** a fraudulent scenario to explain a telephone call from **WADE** to **LABEAUD** prior to the staged accident.

It was further part of the scheme and artifice to defraud that on or about April 3, 2019, Attorney A directed **THOMAS, WADE,** and **JUDY WILLIAMS** to terminate Attorney A from representing them in the lawsuit.

It was further part of the scheme and artifice to defraud that on April 9, 2019, **THOMAS, WADE,** and **JUDY WILLIAMS** each provided false testimony in subsequent depositions taken in conjunction with the lawsuits filed by Attorney A.

### The June 12, 2017, Staged Accident

It was part of the scheme and artifice to defraud that, before on or about June 12, 2017, **LABEAUD** and **LARRY WILLIAMS** decided to stage an automobile accident in order to obtain money through fraud.

8

It was part of the scheme and artifice to defraud that, before on or about June 12, 2017, **LABEAUD** told **LARRY WILLIAMS** that he had an attorney, Attorney Λ, who would handle everything.

It was further part of the scheme and artifice to defraud that **ISREAL** and Scott traveled from Houston, Texas, to New Orleans, Louisiana, to meet with **LARRY WILLIAMS**.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS** borrowed a 2005 Chevrolet Trailblazer ("Trailblazer") from a person known to the Grand Jury.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS** agreed to allow **LABEAUD** to drive **LARRY WILLIAMS**' Trailblazer.

It was further part of the scheme and artifice to defraud that **LABEAUD** drove **LARRY WILLIAMS**' Trailblazer to the Danziger Bridge and parked the Trailblazer in the eastbound far right-lane on Chef Menteur Highway.

**LABEAUD, LARRY WILLIAMS, ISREAL,** and Scott waited in the Trailblazer to locate a tractor-trailer to collide with in the area of Chef Menteur Highway and the Danziger Bridge.

It was further part of the scheme and artifice to defraud that **SOLOMON** waited in his Chevrolet Silverado pick-up truck on the Danziger Bridge immediately behind the Trailblazer operated by **LABEAUD**.

It was further part of the scheme and artifice to defraud that, at approximately 11:30 A.M., **LABEAUD** located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by SMF driving east on Chef Menteur Highway.

It was further part of the scheme and artifice to defraud that **LABEAUD** exited the Trailblazer after the collision and told **LARRY WILLIAMS** to get behind the wheel of the

Trailblazer to make it appear that **LARRY WILLIAMS** was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS** falsely reported to the NOPD that he had been the driver of the Trailblazer and that the tractor-trailer had struck his vehicle.

It was further part of the scheme and artifice to defraud that **SOLOMON** picked up **LABEAUD** after **LABEAUD** fled from the Trailblazer.

It was further part of the scheme and artifice to defraud that **LABEAUD** contacted Attorney A and arranged a meeting with **LABEAUD**, Attorney A, **LARRY WILLIAMS**, **ISREAL**, and Scott at Attorney A's office.

It was further part of the scheme and artifice to defraud that Attorney A paid **LABEAUD** $5,000.00 on or about June 30, 2017.

It was further part of the scheme and artifice to defraud that on or about June 12, 2018, Attorney B filed the Larry Williams Lawsuit in CDC.

It was further part of the scheme and artifice to defraud that on or about September 14, 2018, Attorney B demanded approximately $60,000.00 in settlement for Scott and approximately $56,155.00 in settlement for **ISREAL**.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS**, **ISREAL**, and Scott were treated by doctors and healthcare providers who are known to the Grand Jury at the direction of Attorney A.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS** underwent shoulder surgery because Attorney A told him that he would get more money through the lawsuit if he had the surgery.

It was further part of the scheme and artifice to defraud that **LARRY WILLIAMS** and **ISREAL** each provided false testimony in depositions taken in conjunction with the lawsuit filed by Attorney B.

**D.    OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY:**

### The June 6, 2017, Staged Accident

The below listed Overt Acts all occurred on or about June 6, 2017, unless noted otherwise.

1.    The evening before the staged accident, at approximately 9:03 P.M. on June 5, 2017, **LABEAUD** called **SOLOMON**.

2.    At approximately 9:13 A.M., **LABEAUD** called **SOLOMON**.

3.    In the morning, **THOMAS, WADE, JUDY WILLIAMS**, and **YOUNG** drove **THOMAS'** Avalanche from Houma, Louisiana to New Orleans where they met **LABEAUD**.

4.    At approximately 9:44 A.M., **SOLOMON** called **LABEAUD**.

5.    At approximately 10:32 A.M., **LABEAUD** called **SOLOMON**.

6.    At approximately 10:43 A.M., **SOLOMON** called **LABEAUD**.

7.    At approximately 10:45 A.M., **LABEAUD** called **SOLOMON**.

8.    Shortly before the staged accident, at approximately 10:58 A.M., **LABEAUD** called Attorney A.

9.    At approximately 11:40 A.M., **SOLOMON** called **LABEAUD**.

10.    At approximately 11:53 A.M., **LABEAUD** called **SOLOMON**.

11.    At approximately 12:03 P.M., **WADE** called **LABEAUD**.

12.    **THOMAS, WADE, JUDY WILLIAMS**, and **YOUNG** agreed to allow **LABEAUD** to drive **THOMAS'** Avalanche in order to stage an auto accident.

13.    At approximately 12:12 P.M. and 12:18 P.M., **SOLOMON** called **LABEAUD**.

14.     At approximately 12:26 P.M., **LABEAUD** called **SOLOMON**.

15.     At approximately 12:30 P.M., **LABEAUD**, while driving east on Chef Menteur Highway, intentionally collided with the SRT tractor-trailer.

16.     After the staged accident, **LABEAUD** instructed **THOMAS** to get behind the wheel of the Avalanche to make it appear that **THOMAS** was driving the vehicle at the time of the staged accident and **LABEAUD** fled the scene.

17.     At approximately 12:30 P.M., **THOMAS** contacted the New Orleans Police Department ("NOPD") to report that she had been in an automobile accident.

18.     At approximately 12:39 P.M., **SOLOMON** called **LABEAUD**.

19.     At approximately 12:44 P.M., Attorney A sent a text message to **LABEAUD**.

20.     At approximately 12:44 P.M., **LABEAUD** called **SOLOMON**.

21.     At approximately 12:51 P.M. and 12:53 P.M., **SOLOMON** called **LABEAUD**.

22.     At approximately 1:03 P.M., **LABEAUD** called **SOLOMON**.

23.     At approximately 1:06 P.M., **LABEAUD** called **THOMAS**.

24.     At approximately 1:25 P.M. and 1:29 P.M., **SOLOMON** called **LABEAUD**.

25.     **LABEAUD** rendezvoused with **SOLOMON** who picked **LABEAUD** up in **SOLOMON's** silver Chevrolet Silverado pick-up truck.

26.     At approximately 1:27 P.M., **WADE** called **LABEAUD**.

27.     At approximately 1:34 P.M., NOPD responded to the scene of the staged accident and, shortly thereafter, **THOMAS** falsely reported to the NOPD that she had been the driver of the Avalanche and that the SRT tractor-trailer struck her vehicle.

28.     At approximately 1:35 P.M., **WADE** called **LABEAUD**.

29.     At approximately 1:36 P.M. and 1:43 P.M., **LABEAUD** called Attorney A.

30.     At approximately 1:45 P.M., **LABEAUD** returned to the scene of the staged accident with **SOLOMON** and made a false statement to the NOPD that they witnessed the accident and claimed that the driver of the tractor-trailer had been at fault.

31.     At approximately 1:58 P.M., Attorney A called **LABEAUD**.

32.     At approximately 2:30 P.M., **LABEAUD** called **SOLOMON**.

33.     At approximately 2:34 P.M. and 2:39 P.M., **SOLOMON** called **LABEAUD**.

34.     At approximately 3:06 P.M., **LABEAUD** called Attorney A.

35.     **LABEAUD** contacted Attorney A and arranged a meeting with him, **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** at the Cane's restaurant on Chef Menteur Highway.

36.     Attorney A met with **LABEAUD, THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** after they finished with the NOPD at the scene of the staged accident in order to discuss Attorney A's representation of **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG**.

37.     Attorney A paid **LABEAUD** $7,500.00 for the **THOMAS, WADE, JUDY WILLIAMS,** and **YOUNG** staged accident as well as for another accident.

38.     At approximately 3:32 P.M., **LABEAUD** called Attorney A.

39.     At approximately 4:45 P.M., **SOLOMON** called **LABEAUD**.

40.     On or about June 7, 2017, **LABEAUD** cashed a $7,500.00 check he received from Attorney A.

41.     After or about July 5, 2017, **THOMAS** negotiated a $500.00 check she received from Covenant.

42.     After or about November 27, 2017, Attorney A deposited a $20,000.00 settlement check for **YOUNG** that Attorney A received from Covenant.

43.     On or about March 6, 2018, Attorney A filed the Williams & Wade Lawsuit in CDC.

44.     On or about June 5, 2018, Attorney A filed the Thomas Lawsuit in CDC.

45.     On or about September 13, 2018, **THOMAS, WADE,** and **JUDY WILLIAMS** each provided false testimony in depositions taken in conjunction with the lawsuits filed by Attorney A.

46.     Before on or about April 9, 2019, Attorney A contacted **LABEAUD** because Attorney A was worried about a telephone call made between **WADE** and **LABEAUD** prior to the staged accident and Attorney A instructed **LABEAUD** to contact **THOMAS** and **WADE** to instruct them to "get their stories straight."  During a subsequent meeting, Attorney A gave **LABEAUD** an envelope containing phone records, pleadings, and depositions establishing **THOMAS** and **WADE** lied under oath in their September 13, 2018, depositions.

47.     Before on or about April 9, 2019, Attorney A met with **THOMAS** and **WADE** at a fast-food restaurant outside of New Orleans where Attorney A suggested to **THOMAS** and **WADE** a fraudulent scenario to explain a telephone call from **WADE** to **LABEAUD** prior to the staged accident.

48.     On or about April 9, 2019, **THOMAS, WADE,** and **JUDY WILLIAMS** each provided false testimony in depositions taken in conjunction with the lawsuits filed by Attorney A.

49.     After or about June 7, 2019, **THOMAS** deposited a $7,500.00 settlement check she received from Covenant.

50.     After or about June 7, 2019, **WADE** cashed a $7,500.00 settlement check she received from Covenant.

14

51.     After or about June 7, 2019, **JUDY WILLIAMS** negotiated a $7,500.00 settlement check she received from Covenant.

### The June 12, 2017, Staged Accident

The below listed Overt Acts all occurred on or about June 12, 2017, unless noted otherwise.

1.     Before on or about June 12, 2017, **LABEAUD** and **LARRY WILLIAMS** decided to stage an automobile accident in order to obtain money through fraud.

2.     Before on or about June 12, 2017, **LABEAUD** told **LARRY WILLIAMS** that he had an attorney, Attorney A, who would handle everything.

3.     Approximately two days before the staged accident, **ISREAL** and Scott traveled from Houston, Texas, to New Orleans, Louisiana, to meet with **LARRY WILLIAMS**.

4.     **LARRY WILLIAMS** borrowed a Trailblazer from a person known to the Grand Jury to use in the staged accident.

5.     **LARRY WILLIAMS** picked up **LABEAUD**, **ISREAL**, and Scott in the Trailblazer.

6.     At approximately 10:02 A.M., **LABEAUD** called **SOLOMON**.

7.     At approximately 10:06 A.M., 10:49 A.M., and 10:54 A.M., **SOLOMON** called **LABEAUD**.

8.     At approximately 11:01 A.M., **LABEAUD** called **SOLOMON**.

9.     Shortly before the staged accident, at approximately 11:21 A.M., **LABEAUD** called Attorney A.

10.     **LABEAUD** drove **LARRY WILLIAMS'** Trailblazer to the Danziger Bridge and parked the Trailblazer in the far right-lane heading east on Chef Menteur Highway.

11.     **LABEAUD, LARRY WILLIAMS, ISREAL,** and Scott waited in the Trailblazer to locate a tractor-trailer to collide with in the area of Chef Menteur Highway and the Danziger Bridge.

12.     **SOLOMON** waited in his Chevrolet Silverado pick-up truck on the Danziger Bridge immediately behind the Trailblazer operated by **LABEAUD.**

13.     At approximately 11:30 A.M., **LABEAUD** located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by SMF driving east on Chef Menteur Highway.

14.     **LABEAUD** exited the Trailblazer after the collision and told **LARRY WILLIAMS** to get behind the wheel of the Trailblazer to make it appear that **LARRY WILLIAMS** was driving the vehicle at the time of the staged accident.

15.     After the staged accident, **SOLOMON** pulled next to the SMF tractor-trailer and attempted to assert that the SMF tractor-trailer driver was at fault.

16.     **LARRY WILLIAMS** falsely reported to the NOPD that he had been the driver of the Trailblazer and that the tractor-trailer had struck his vehicle.

17.     At approximately 11:37 A.M., **LABEAUD** called **LARRY WILLIAMS.**

18.     At approximately 11:47 A.M., **LABEAUD** called **SOLOMON.**

19.     **SOLOMON** picked up **LABEAUD** after **LABEAUD** fled from the Trailblazer on foot.

20.     At approximately 12:32 P.M., **SOLOMON** called **LABEAUD.**

21.     At approximately 1:00 P.M., **LABEAUD** called Attorney A.

22.     At approximately 1:01 P.M., **LABEAUD** called Attorney A and B's law firm.

23.     At approximately 5:41 P.M., **SOLOMON** called **LABEAUD.**

24.     **LABEAUD** contacted Attorney A and arranged a meeting with **LABEAUD**, Attorney A, **LARRY WILLIAMS, ISREAL**, and Scott at Attorney A's office.

25.     At approximately 5:45 P.M., **LABEAUD** called **SOLOMON**.

26.     At approximately 5:53 P.M., **SOLOMON** called **LABEAUD**.

27.     On or about June 30, 2017, Attorney A paid **LABEAUD** $5,000.00.

28.     On or about June 12, 2018, Attorney B filed the Larry Williams Lawsuit in CDC.

29.     On or about September 14, 2018, Attorney B demanded approximately $60,000.00 in settlement for Scott and approximately $56,155.00 in settlement for **ISREAL**.

30.     **LARRY WILLIAMS, ISREAL,** and Scott were treated by doctors and healthcare providers who are known to the Grand Jury at the direction of Attorney A.

31.     Attorney A told **LARRY WILLIAMS** that he would get more money if he had shoulder surgery.

32.     On or about December 20, 2018, **LARRY WILLIAMS** and **ISREAL** each provided false testimony in depositions taken in conjunction with the lawsuits filed by Attorney B.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 7
### (Wire Fraud-The June 6, 2017, Staged Accident)

**A.     AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.     THE OFFENSE:**

On or about the dates and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **DAMIAN LABEAUD, MARIO SOLOMON,**

LUCINDA THOMAS, MARY WADE, JUDY WILLIAMS, DASHONTAE YOUNG, and others known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice to defraud set forth in Part C of Count 1, caused to be transmitted by means of a wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below:

| COUNT | DESCRIPTION OF USE OF WIRE |
|-------|----------------------------|
| 2 | Unnumbered check, dated June 6, 2017, from Attorney A's IberiaBank account to **LABEAUD**, in the amount of $7,500.00, and cashed on June 7, 2017. |
| 3 | Check No. 49134, dated July 5, 2017, from Covenant's Chase account to **THOMAS**, in the amount of $500.00, and deposited after July 5, 2017. |
| 4 | Check No. 50047, dated November 27, 2017, from Covenant's Chase account to **YOUNG** and Attorney A, in the amount of $20,000.00, and deposited into Attorney A's Iberia account after November 27, 2017. |
| 5 | Check No. 609228, dated June 7, 2019, from Covenant's Chase account to **THOMAS**, in the amount of $7,500.00, and deposited after June 7, 2019. |
| 6 | Check No. 609229, dated June 7, 2019, from Covenant's Chase account to **WADE**, in the amount of $7,500.00, and cashed after June 7, 2019. |
| 7 | Check No. 609230, dated June 7, 2019, from Covenant's Chase account to **JUDY WILLIAMS**, in the amount of $7,500.00, and negotiated after June 7, 2019. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 8
### (Wire Fraud-The June 12, 2017, Staged Accident)

A.     **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

B.     **THE OFFENSE:**

On or about June 27, 2018, in the Eastern District of Louisiana and elsewhere, the defendants, **DAMIAN LABEAUD, MARIO SOLOMON, LARRY WILLIAMS, GENETTA ISREAL**, and others known and unknown to the Grand Jury, for the purpose of executing the

18

scheme and artifice to defraud set forth in Part C of Count 1, caused to be transmitted by means of a wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below:

| COUNT | DESCRIPTION OF USE OF WIRE |
|-------|----------------------------|
| 8 | Email sent by M. M., Southeastern Motor Freight, Inc., in Jefferson, Louisiana, to C. L., Napa River Insurance Services, in Indianapolis, Indiana, attaching the Larry Williams Lawsuit filed in the Civil District Court for the Parish of Orleans by Attorney B on June 12, 2018. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

1.      The allegations of Counts 1 through 8 are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.      As a result of the offenses alleged in Counts 1 through 8, the defendants, **DAMIAN LABEAUD, LUCINDA THOMAS, MARY WADE, JUDY WILLIAMS, DASHONTAE YOUNG, GENETTA ISREAL, MARIO SOLOMON**, and **LARRY WILLIAMS**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offenses.

3.      If any of the above-described property, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

/ FOREPERSON

PETER G. STRASSER
UNITED STATES ATTORNEY

BRIAN M. KLEBBA
Assistant United States Attorney

EDWARD J. RIVERA
SHIRIN HAKIMZADEH
Assistant United States Attorneys

JARED L. HASTEN
Trial Attorney, U.S. Department of Justice

New Orleans, Louisiana
December 5, 2019

FORM OBD-34

No. 19-219

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

DAMIAN K. LABEAUD, a/k/a Damian Kevin Lebeaud,
a/k/a Damien K Lebeaud, LUCINDA THOMAS,
MARY WADE, JUDY WILLIAMS, a/k/a Judy Lagarde,
DASHONTAE YOUNG, GENETTA ISREAL,
MARIO SOLOMON, a/k/a Mario Salomon, LARRY
WILLIAMS

# SUPERSEDING INDICTMENT

SUPERSEDING INDICTMENT FOR CONSPIRACY
TO COMMIT WIRE FRAUD, WIRE FRAUD,
AND NOTICE OF FORFEITURE

VIOLATION: Title 18, U.S.C., Sections 371, 1343, and 2

_____

_A true bill._

_____

_____
_____ person

_____

Filed in open court this _____

2019. _____ day of ___

A.D. ___

_____
Clerk

Bail, $ _____

_____

_____
BRYAN M. KLEBBA
Assistant United States Attorney